# SCHOOL DISTRICT NO. 3 IN CARBON COUNTY v. WESTERN TUBE COMPANY.

Assignment of Error — Exceptions — School Warrant — Contract in Excess of Tax Voted—Limitation Upon Indebtedness of School District—Authority of Board.

1. All exceptions taken during a trial of a cause, not embodied in the motion for new trial, will be regarded as waived.

2. An omission from the bill of exceptions of certain record evidence is not fatal when the facts shown by the portions thereof pertinent and competent under the issues are positively testified to by witnesses without objection, and such testimony is in the bill; and the bill itself containing the statement that such record evidence is in the bill in full in the testimony of witnesses.

3. The authority to create an indebtedness of a school district in excess of the sum voted and appropriated by the annual meeting which should run beyond the current school year, is not vested in the district board; and a warrant issued by the board in excess of the sum voted for that period is void as issued without authority.

4. A school warrant is not negotiable paper, and its assignment for value, to an innocent purchaser, does not preclude defenses as to the legality of its issue.

5. Such warrant, although prima facie evidence of indebtedness, is burdened with all equities in whatever hands it may come.

6. The provisions of the Act of Congress limiting public indebtedness in the territories, included school districts by the use of the terms "political or municipal corporation, county or other subdivision."

7. Under the congressional provision that no such public corporation shall "ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding, etc.," it makes no difference what the purpose or the manner is, if the debt is created in excess of the limit, it is wholly void.

[Decided January 5, 1895. Commenced in District Court, March 23, 1891.]

Error to the District Court for Carbon County. Hon. Jesse Knight, Judge.

In this action the Western Tube Company, formerly the Haxton Steam Heater Company, sought to recover from School District No. 3 in the county of Carbon upon a school warrant issued to the A. L. Strang Co. for $2,650, October 30, 1886, in payment for steam heating apparatus placed in the school building at Rawlins, which warrant had been endorsed by the A. L. Strang Co. and was held by the plaintiff. $1,206.46 had been paid upon the warrant in three installments from February 24, 1887 to January 16, 1889. The answer denied the material allegations of the petition as to the indebtedness specifically; and for a second defense alleged, in substance, that no tax had been ordered levied by the district to raise money for the purpose of supplying such apparatus, or to pay the alleged warrant; that there was no money in the treasury applicable to its payment, and that the board was without authority to incur the indebtedness. For a third defense it was alleged that the district was prohibited from incurring any indebtedness exceeding four per centum, in the aggregate, on the value of the taxable property within the district, and that before the warrant was issued, and prior to the time of the alleged sale and delivery of the apparatus, the district had become indebted in an amount equal to the said limitation, and the indebtedness incurred by the purchase of said apparatus and the issuance of the order or warrant was void. The evidence disclosed that in June, 1886, at a special meeting of the board of trustees of the district it was agreed to sign a contract for the construction of a schoolhouse, and that the building committee was given power to let a contract to the lowest bidder for heating apparatus for the new schoolhouse, and that the board agreed to issue warrants of the district for the payment of the same. The apparatus was purchased and put in place and the warrant in payment therefor issued. Some question seems to have been raised as to any order of the board having been made other than as above stated for the issuance of the

warrant. As the case was disposed of upon the questions relating to the authority of the board and district to incur the indebtedness, the other facts are not material, except that while the evidence disclosed to some extent the condition of the "contingent fund" of the district, there was no evidence touching the schoolhouse fund. The warrant was drawn upon the contingent fund. Judgment for the balance due upon the warrant with interest was given in favor of the plaintiff, and the defendant brought error.

*McMicken & Blydenburgh,* for plaintiff in error.

A school district is a corporation with limited powers. (Dillon Mun. Corp., sec. 24; Harris v. School Dist., 28 N. H., 61; Stanhope v. School Directors, 42 Ill. App., 570; 21 Am. & Eng. Ency. L., 800.) The purchase of heating apparatus was not in the power of the trustees. (R. S., secs. 3927, 3936;Vevil v. Clifford, 63 Wis., 435; Fluty v. School Dist., 49 Ark., 94.) The warrant was void because the statute was not followed, and the claim allowed as required by law. (Andrews v. Sch. Dist., 37 Minn., 96; Adams v. State, 82 Ill., 32; Wells v. People, 71 id., 532; School, &c., v. Fogleman, 76 id., 189; Peers v. B'd of Ed., 72 id., 508; Re Tinsley, 90 N. Y., 231.) Persons dealing with school district trustees are bound to take notice of their fiduciary character and authority. (Gibson v. Sch. Dist., 36 Mich., 404; Knabe v. B'd Ed., 67 id., 262.) Creating indebtedness is not among the powers granted such officers. (Authorities cited above.) A party suing on a warrant must show a strict compliance with the law. (Twp. v. Ryan, 86 Pa. St., 459; Hubbard v. Town, &c., 28 Wis., 674.) All proceedings should be made matters of record and proved by it. (Sch. Dist. v. Blakeslee, 13 Conn., 227; Sherwin v. Bugbee, 17 Vt., 337; Jordan v. Sch. Dist., 38 Me., 164; Co. Com'rs v. Chitwood, 8 Ind., 458; Trustees v. Osborne, 9 id., 458; Archer v. Com'rs, 3 Blackf., 501; El Dorado v. Reed, 11 Cal., 130; Campbell v. Brackenridge, 8 Blackf., 47; Potts v. Henderson, 2 Ind., 327; Crump v. Supervisors, 52 Miss., 107.) The holder must look to the

particular fund upon which the warrant is drawn. (Campbell
v. Polk Co., 76 Mo., 57; Pettis Co. v. Kingsbury, 17 id.,
479; Moody v. Cass Co., 74 id., 307; Kingsbury v. Pettis Co.,
48 id., 207; Bore v. Co., 4 Dill., 216; McCullough v. Brook-
lyn, 23 Wend., 458; Co. v. Cox, 6 Ind., 403; People v.
Wood, 71 N. Y., 371; Cuyler v. Rochester, 12 Wend., 165;
Argenti v. San Fran., 16 Cal., 255; Martin v. Same, id., 285;
Lake v. Williamsburgh, 4 Denio, 520; 5 Binn., 392; 32 Ia.,
577; 18 Cal., 126; 49 Me., 167; 30 Md., 315; 44 N. H., 424;
33 Vt., 431; 37 N. J. Eq., 123; 7 Foster, 269.) An order
payable out of a particular fund operates as an equitable
assignment of the fund. (91 Pa. St., 96; 3 Paige, 373; 26
Me., 114; 2 Metc. Ky., 530; 9 Paige, 243; 51 N. H., 407;
18 Mo., 564; 20 Vt., 25; 1 Wall., 604.) The congressional
prohibition upon incurring indebtedness applied to all debts
of whatever kind. (Bank v. Sch. Dist., 39 Ia., 490; French
v. Burlington, 42 id., 614; 36 id., 393; 44 id., 122; 43 id.,
48; 34 id., 208; 51 id., 385; 37 id., 542; 44 id., 122; Millers-
town v. Frederick, 114 Pa. St., 435; Prince v. Quincey, 105
Ill., 138; Springfield v. Edwards, 84 id., 626; Law v. People,
87 id., 282; Sackett v. N. Albany, 88 Ind., 473; Buchanan v.
Litchfield, 102 U. S., 278; Dixon Co. v. Field, 111 id., 83;
Lake Co. v. Rollins, 130 id., 662; Lake Co. v. Graham, id.,
674; Litchfield v. Ballou, 114 id., 190; Sutro v. Pettit, 5 Am.
St., 442; Williams v. La., 13 Otto, 637; People v. May, 9
Colo., 80; App. of Erie, 91 Pa., 398; Wisconsin, &c., v. Tay-
lor Co., 52 Wis., 39.) The warrant not negotiable. Bank
v. Dist., 39 Ia., 490.) A subsequent ratification cannot val-
idate the unlawful corporate act. (Company v. Van Duran,
40 Mich., 429; Jefferson v. Arrighi, 54 Miss., 668; 48 Pa.
St., 528; Nash v. St. Paul, 11 Minn., 174; Brady v. Mayor,
20 N. Y., 312; 51 Tex., 332; 63 N. Y., 239; 77 id., 130;
41 N. J. L., 45; 16 Cal., 591; 108 U. S., 282; 59 Cal., 517;
84 N. C., 169; 117 U. S., 657; 43 Ia., 48; 8 Colo., 257; Wells
v. People, supra; Gibson v. Dist:, 36 Mich., 404; Johnson
v. Dist., 67 Mo., 319; 10 Neb., 239; 33 O. St., 321; 25
Ia., 447.) Parol evidence is inadmissible to vary or control
a contract. (1 Greenleaf Ev., sec. 275; 11 Mass., 30; 2 W.

Bl., 1,249; 2 B. & P., 565; 1 Johns., 467; 78 N. Y., 74; 1 Rice Ev., sec. 157; 16 Pick., 227; 20 N. H., 246; 1 Fla., 301; 17 Or., 417; 3 Neb., 481; 119 U. S., 604.)

*D. H. Craig* and *Lacey & Van Devanter,* for defendant in error.

The rights of creditors or third persons cannot be prejudiced by a failure on the part of the district to keep proper minutes or records of its proceedings. (Gillet v. Com'rs, 18 Neb., 410; Dillon Mun. Corp., secs. 300-1.) Every corporation, public and private, has the power to make contracts and incur debts in discharging its corporate duties. (Dillon, secs. 117-125; Neugass v. City, 42 La. Ann., 163; Allen v. LaFayette, 89 Ala., 641.) The authorities cited contra by counsel rest upon the peculiar wording of the statutes. If the district when the contract was made had the money in its treasury to the obligations under that contract, or to meet enough of its debts to bring the balance within the limit, then the prohibitive statute would not apply. (Dively v. Cedar Falls, 27 Ia., 227.) The third defense did not allege that there was not cash in the treasury. Each defense must be tested alone. (Bliss C. Pl., 2nd ed., 346.) This contract, being for necessaries, was not incurring a debt within the meaning of the statute. (Grant v. Davenport, 36 Ia., 396.) As an expense of this kind was payable out of the school house fund, the presumption is that when the contract was made the district was acting lawfully and had money in the proper fund to meet the obligation. By afterwards misappropriating the money the district could not invalidate the obligation. (New Orleans v. U. S., 49 Fed., 40.) The bill of exceptions must contain all the evidence, which fact must be shown on its face. (France v. Bank, 3 Wyo., 187; Wyo. L. & T. Co. v. Holliday, id., 385; Roy v. U. Merc. Co., id., 417; Coil v. Willis, 19 O., 28; Cantrell v. State, 18 O. St., 477; Wyman v. Buckstaff, 27 Wis., 479; Moul v. Moul, 30 id., 203; Ehle v. Brown, 31 id., 405; Seig v. Long, 72 Ind., 18; Brownlee v. Hare, 64 id., 311; Armleder v. Sieberman, 33 O. St., 77; Merrifield v. Weston, 68 Ind., 70; Harmon v.

Sexton, 69 id., 37; Powers v. Evans, 72 id., 23.) The evidence must be given in full. (Ry. v. Probst., 30 O. St., 104.)

GROESBECK, CHIEF JUSTICE.

Judgment was rendered in favor of the plaintiff below in the sum of $2,364.50, and its reversal is sought by proceedings in error. The assignments of error relate to matters occurring during the trial of the cause. By repeated decisions of this court, under its rules and unbroken line of decisions by courts in other jurisdictions, all exceptions taken during the trial of a cause and not embodied in the motion for a new trial are regarded as waived. The grounds for a new trial as embodied in the motion therefor alone will be considered. As one of the assignments of errors is that the district court erred in overruling the motion for a new trial, and this assignment is sufficient under the rules of this court, it brings to our notice the grounds of error stated in the motion for a new trial. These are that the decision and judgment of the trial court is not sustained by sufficient evidence and is contrary to law, and they depend wholly upon the presence in the record of all of the evidence given in the cause. Fellenzer et al. v. Van Valzah, 95 Ind., 132. This is the general rule and must usually be complied with. The bill of exceptions states that certain "exhibits" admitted in evidence do not appear in the bill of exceptions for the reason that they are "contained in full in testimony of the witnesses." These omitted matters are (1) the assessment roll of Carbon county for the year 1886, or so much thereof as contains the assessment of the property within the school district, plaintiff in error, for territorial and county taxation for that year; (2) the stub of school orders or warrants of the school district showing a record of orders issued on its treasurer for a portion of said year, and (3) the book of the district treasurer showing the condition of the contingent fund of the school district during certain portions of the year 1886.

It is urged that certain other records of the district board admitted in evidence do not appear, but we do not find this contention supported by an examination of the bill of exceptions.

The assessment roll of the county was brought into the district court during the trial of the cause by its custodian, the county clerk; for the purpose of showing the aggregate amount of the taxable property of the school district for the year 1886 as assessed for territorial and county taxation, and this ultimate fact was testified to by the county clerk without objection, from an inspection of the roll. The stub book of the order or warrants issued by the district board for a portion of the year was admitted in evidence to show that no record was made in any of the order stubs of the order or warrant issued to the assignor of the defendant in error and sued upon in this action, and this negative fact appears in the evidence of the secretary or clerk of the district board, the custodian of its records. The entries in the book of the district treasurer for certain portions of the year 1886, showing an overdraft of the contingent fund of the district were set forth in the testimony of the district treasurer who made the entries and from the book kept by himself. All these facts are stated in full in the evidence of these witnesses from the original records produced at the trial, which were referred to by them in the course of their testimony based entirely upon the matters contained or not contained in these records, and no objections were interposed to this form of evidence.

We do not think that the omission to incorporate in the bill any or all of these records by copies is fatal, as the portions thereof pertinent and competent under the issues raised by the pleadings are in the bill. There is no dispute as to the ultimate facts established from an inspection of these records. The rule requiring that the entire evidence should be incorporated in the bill of exceptions where the verdict of a jury or the finding of a court is challenged as not sustained by sufficient evidence or contrary to law is not an inflexible one.

Although not subject to very many exceptions, it is nevertheless subject to some very important ones. It should have a reasonable application and the adherence to a rigid rule would be unwise because too technical. Elliott App. Procedure, sec. 823. It is true the original records were admitted in evidence, for what purpose it does not appear, except probably for the inspection of the court and the adverse counsel, as they were public records and could not have been retained in the archives of the trial court. There must have been a tacit understanding that they were admitted merely for the purpose of examination, and this must have been the belief of the trial judge, as he certifies that they are contained in full in the testimony of the witnesses. Under the circumstances, it certainly does not seem necessary to swell the record, already unnecessarily voluminous, by injecting into the bill such a mass of matter from the inspection of which certain facts plainly appear and are embodied in the evidence of the witnesses. Sufficient appears from undisputed evidence in the cause to enable this court to determine without surmise or conjecture that the finding or decision as well as the judgment of the trial court is not sustained by sufficient evidence and is contrary to law, and this determination we now proceed to discuss.

2. The important allegations of the petition are that the plaintiff in error was justly and lawfully indebted to the assignor of the defendant in error for a certain steam-heating apparatus before October 30, 1886, sold and delivered to it at its special instance and request, and that on that day the indebtedness so incurred was $2,650.00, which sum was then due and payable. The claim therefor was presented for payment to the trustees of the district and by them at a regular meeting was audited and allowed and by an order entered of record an order was directed to issue on the treasurer of the district for the amount. This order was issued and by the payee, the assignor of the defendant in error, was assigned to it for value. The answer contains a specific denial of each allegation in the petition, and sets up two defenses additional—one that no tax had been

levied and no sum voted by the annual school district meeting for the purpose of purchasing the heating apparatus, that there was no money in the treasury of the district that could be applied to the payment of the warrant, and that the contract was executed and the warrant was issued without authority in the board of trustees of the district and was therefor and is void,—the other defense interposed is that at the time the warrant was issued the district had become and was indebted in various matters and for certain purposes, exclusive of the amount of the warrant sued upon, to an amount equal to four per centum of the value of the taxable property within the limits of the district, as shown by the last preceding annual assessment of the taxable property of the district for territorial and county taxation, wherefore the district was prohibited from incurring any additional indebtedness under the terms of an act of Congress, entitled "An act to prohibit the passage of special laws in the Territories of the United States, to limit territorial indebtedness and for other purposes," July 30, 1886 (ch. 818, p. 170, Stat. 1st Sess. 49th Congress; see Rev. Stat. Wyo., p. 39). These defenses of new matter, if they may be so termed, were controverted by the reply.

Without considering the issues raised by the pleadings relating to the regularity of the proceedings of the district board in executing the contract which culminated in the issuing of the warrant sued upon, and assuming that the action of the board was tantamount to the proper audit and allowance of the claim and a direction to issue the warrant, the same as if every step of the action taken by the board had been entered of record, the grave question arises as to the power of the district board to make any contract at all for the purchase of the heating apparatus, or to issue the interest-bearing warrants of the district therefor. The powers of the district board are sharply defined and those of the annual school district meeting are as clearly prescribed by the statutes. The moneys used for district purposes, from the avail of proceeds of the special school district tax are to be voted and appropriated by the electors of the school district in

annual school district meeting convened, and the powers of this meeting are specifically enumerated in the statute: To supply any deficiency in the fund for the payment of teachers; to purchase or lease a suitable site for a school house or school houses; to build, rent or purchase a school house or school houses, and to keep in repair the same with the necessary fuel and appendages; for procuring libraries for the schools, books and stationery for the use of the board and district meetings; for purchasing books for indigent scholars, and "to defray all other contingent expenses of the district." In voting money, the district meeting must designate the respective objects for which the same is raised and the amount to be raised for such object. Sections 3927-8, Rev. Stat.

The powers of the district board are to make all contracts, purchases, payments and sales "necessary to carry out every vote of the district" for procuring any site for a school house, renting, repairing and furnishing the same and disposing thereof, or for keeping a school therein and to perform such other duties as may be delegated to them by the district meeting. Rev. Stat., sec. 3936. The last preceding annual school district meeting made no specific appropriation for the purchase of a heating apparatus, but voted and appropriated $1,500 for the contingent fund of the district. At the time of the execution of the contract for the apparatus the contingent fund of the district was overdrawn and was at the time of the annual meeting of the district. The sum voted for the contingent expenses of the district was not available, when the contract was entered into and when the warrant was drawn, as special school district taxes are collected in the same manner as and at the same time as county taxes, and the limit of time for the payment of taxes is the last day of November in each year. The warrant was drawn upon a specific fund as the statute requires and that was the contingent fund. The parties to the contract evidently understood that there were no funds in the district treasury at the time it was entered into, because the contract stipulated that the payment for the apparatus should be

made in warrants. There could not have been sufficient moneys in this fund during the school year ending the first Monday in May, 1887, to pay the amount of the warrant, as the contingent fund was overdrawn some thirteen hundred dollars when the contract was made, and the sum voted for this fund was but $1,500.00. In fact, there was no payment made on the warrant for the current school year except the sum of $206.92, which appears to have been made Feb. 24, 1887. No money could have been transferred into the contingent fund from other funds, as the only transfer of funds permitted by statute to be made by the district board is between the school house fund and the teachers' fund. Rev. Stat., 3960. So it appears that the district board and the assignor of the defendant in error entered into this contract knowing the situation and realizing that a large amount of the warrant would be carried over beyond the current school year. The Ninth Legislative Assembly of the Territory, which assembled in January, 1886, passed an act amendatory of the statute defining the powers of the school meeting and limiting the amount to be raised by special tax in the district to three mills on the dollar of the taxable property of the district, and this act was in force some time previous to the annual school meeting in 1886. It would seem from the evidence that the sum voted, $1,500.00 for contingent purposes, was the extreme limit of taxation allowed by law. So that with these restrictions imposed by law upon the district annual meeting and the board, the purchase of a steam-heating apparatus at such a comparatively large sum, $2,650.00, was not warranted under the state of the finances of the district. Some discretion must of necessity be entrusted to the district board in meeting the emergencies of the schools during the year, but the statute seems to contemplate this, as a lump sum of money may be voted, and in this case was voted, for contingent expenses of the district. The creation of obligations against this fund would be entrusted to the district board and to the sound discretion of these officials. But while the courts have manifested great reluctance to strictly construe stat-

utes that would cripple these officers in the discharge of their delicate and important duties, it is going too far to say that a district board may contract debts far in excess of the appropriations made for that purpose. Certainly our statute does not permit it, and we doubt that such unauthorized expenditures would be countenanced anywhere in the absence of a statute giving a district school board express powers to contract for the district beyond the annual appropriations made by the annual school meeting, where such meeting is made the source of the power of taxation. It would authorize the creation of a floating indebtedness which should bind the district the same as a bonded indebtedness permitted by an act of the legislature. In some of the States the district board or some of its members are authorized either in express statutory terms or by implication, where the board or officer are charged with certain duties to incur expenses for the district in limited sums for specified purposes, but this power to bind the district is strictly limited to the purposes named in the statute. Conklin v. School District, 22 Kan., 521; Sch. Dist. v. Snell, 24 Mich., 350; Gibson v. Sch. Dist., 36 id., 404; Johnson v. Sch. Dist., 67 Mo., 319. The authority to create any indebtedness in excess of the sum voted and appropriated by the annual meeting which should run beyond the current school year is not vested in the district board, and so the warrant issued by the board in excess of the sum voted for that period was issued without authority and was and is void. The assignor for the defendant in error was bound to enquire as to the power of the district board to make the contract for the heating apparatus and to issue warrants in payment therefor when there were no moneys in the proper fund and could not be for the school year that could be applied to its payment. The warrant sued upon cannot be considered negotiable paper, as it is simply a direction to the district treasurer to pay the amount therein named to the order of the payee. The assignment of it for value to an innocent purchaser does not preclude defenses as to the legality of its issue, and the de-

fendant in error stands in the same position as its assignor did.

The order or warrant may be prima facie evidence of indebtedness, but it is burdened with all equities in whatever hands it may come, and the defense of the illegality of its issue and of the contract on which it is based may be interposed even against an innocent transferee. Both the original contract and the warrant issued in payment of the heating apparatus are void as executed without authority.

3.   The warrant is void for another reason. It appears from the record that the aggregate assessment of the school district for territorial and county taxation for the year 1886, being the last preceding annual assessment prior to the incurring of the obligation was $479,115. Four per centum of this amount is $19,164.60. By act of the territorial legislature, the school district was given authority to issue bonds and to create a bonded indebtedness in the sum of $25,000.00, for the purpose of erecting a school building, and under this authority, bonds were issued for that purpose to such an amount by the district, June 1, 1886, due in thirty years from the date thereof, and redeemable in five years at the pleasure of the district, bearing an annual interest at the rate of eight per centum. The provisions of the act of congress limiting indebtedness in the Territories and which was in force until July 10, 1890, when the State was admitted into the Union, and when it was superseded by as radical restrictions in the State constitution, is as follows:

"That no political or municipal corporation, county or other subdivision in any of the Territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such corporation, county or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount shall be void. That nothing in this act contained shall be construed as to affect the validity of any act of any territorial

legislature heretofore enacted, or of any obligations existed or contracted thereunder, nor to preclude the issuing of bonds already contracted for in pursuance of express provisions of law; nor to prevent any territorial legislature from legalizing the acts of any county, municipal corporation or subdivision of any territory as to any bonds heretofore issued or contracted to be issued." Sec. 3, Ch. 818, Stat. 49th Cong., 1st Sess.

The provisions of this section are sweeping and include school districts within their scope. It is urged that the debt attempted to be incurred by the district board for the heating apparatus was a necessary one, and that the very existence and maintenance of the public schools requires that they should be kept open and their pupils comfortably seated and warmed, but this question is settled. The provisions of the act of Congress were probably borrowed from the constitution of Illinois, which contains a similar restriction, a limitation which has been judicially interpreted. The clause shall not become indebted "in any manner or for any purpose" in the Illinois constitution, is construed to mean just what it says and not to permit an exception that would allow a public corporation to incur indebtedness for supplies to meet its ordinary wants and necessities, an exception which the framers of the constitution did not see fit to make and which the courts have no power to insert. Prince v. City of Quincy, 105 Ill., 143; Same v. Same, id., 216; City of Springfield v. Edwards, 84 id., 626; Law et al. v. People, 87 id., 385. The same principle is sustained by the Supreme Court of the United States in construing a similar restriction in the constitution of Colorado. Lake County v. Rollins, 130 U. S., 662; Lake Co. v. Graham, id., 674. It makes no difference for what purpose or in what manner the debt was created; if in excess of the statutory or constitutional limit, it is wholly void. As the bonded indebtedness of the school district was largely in excess of the limit fixed by congress, the attempt to create an additional indebtedness was futile and therefore the contract for the heating apparatus and the warrant issued in payment therefor was void. No direct evi-

dence appears showing that the school district ever ratified this contract or assumed the indebtedness, and it is doubtful if it could do so. Payments have been made on the warrant and the principal reduced nearly one thousand dollars, and such payments appear to have been made from the contingent fund of the school district; but nothing directly appears to show that such payments were directed by the district. It is difficult to see how the district could ratify the void contract or assume the void indebtedness without creating a new debt or incurring an obligation which could have been met in full from the revenues of a single year under the limitations imposed by statutory or constitutional provisions since the warrant was issued. It does not seem possible under our statutes that a school district can incur a debt to be carried along from year to year without express legislation to that end, warranted by the constitution or by sessional enactment. Such a proceeding is not contemplated by the law and is impliedly interdicted by its restrictive terms.

4. It is unnecessary to decide whether or not the school district would be liable on a quantum meruit, as the action was brought on an express promise to pay, and there is no proof whatever of the reasonable value of the apparatus.

The judgment of the district court for Carbon county is reversed and the cause is remanded to that court for a new trial.

Conaway and Corn, JJ., concur.